# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
### CIVIL ACTION NO: _____

|  |  |
|---|---|
| **JANE DOE L.Y. AND JUNE DOE A.D.,** | |
| Plaintiffs, | |
| vs. | **CLASS ACTION COMPLAINT** |
| **TRAILS ACADEMY, LLC., TRAILS CAROLINA, LLC., TRAILS MOMENTUM A/K/A TRAILS CAROLINA, WILDERNESS TRAINING & CONSULTING, LLC D/B/A FAMILY HELP & WELLNESS, WTC HOLDCO, LLC, WTCSL, LLC AND UNNAMED ENTITIES 1-10,** | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

COME NOW Plaintiffs Jane Doe L.Y. and June Doe A.D., individually and on behalf of all others similarly situated, by and through their undersigned attorneys, and hereby file this Class action complaint against Defendant Trails Academy, LLC, Defendant Trails Carolina, LLC, Defendant Trails Momentum a/k/a Trails Carolina, Defendant Wilderness Training & Consulting, LLC ("WTC") d/b/a Family Help & Wellness ("FHW"), Defendant WTC Holdco, LLC, Defendant WTCSL, LLC, Defendants Unnamed Entities 1-10 and their officers, directors, managers, employees and allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this Class action lawsuit to recover economic losses suffered by Plaintiffs and Class members (defined below) as a result of the unfair business practices of

1

Defendant Trails Momentum a/k/a Trails Carolina, Defendant Trails Academy, LLC, Defendant Trails Carolina, LLC, Defendant Wilderness Training & Consulting, LLC ("WTC") d/b/a Family Help & Wellness ("FHW"), Defendant WTC Holdco, LLC, Defendant WTCSL, LLC, Defendants Unnamed Entities 1-10 and their officers, directors, managers, employees and agents (hereinafter collectively referred to as "Defendants") in violation of the North Carolina Unlawful Trade Practices Act, N.C.G.S. § 75-1.1 *et seq.*, Oregon Unlawful Trade Practices Act, Or. Rev. Stat. 646.608, *et. seq.*, Florida Unlawful Trade Practices Act, Fla. Stat. § 501.201, *et seq.* and for negligent misrepresentations, and individually, for negligence/negligent infliction of emotional distress. Plaintiffs and Class members each spent thousands of dollars for tuition based on Defendants' unfair business practices and material misrepresentations.

2. Defendants are for-profit entities in the business of advertising, making referrals for, and selling residential programming for "troubled" adolescents and young adults.

3. Trails Momentum a/k/a Trails Carolina is a for-profit program run by WTC, which is part of an organization of for-profit affiliated businesses that does business as Family Help & Wellness. Family Help & Wellness is based in Salem, Oregon, and it operates various "troubled" teen programs in North Carolina, Idaho, Utah, and Arizona including Trails.

4. Family Help & Wellness advertises that young people enrolled in their program will experience "[a]dventure programming, clinical services, education, service-learning, community living, and family programming [which] are seamlessly interwoven to maximize the transference of soft and hard skills in a way the empowers our graduates in their post Trails Momentum lives."[1]

---

[1] Family Help & Wellness, *Trails Momentum*, http://web.archive.org/web/20210111143005/https://famhelp.com/trails-momentum/ (archived by Wayback Machine on Jan. 22, 2021).

2

5.      Family Help & Wellness boasts that Trails is a "whole student centered growth experience."[2]

6.      Despite these claims, Defendants are part of an industry referred to by survivors as the "Troubled Teen Industry" which market themselves as an easy solution to fix "troubled" teens and family dynamics, but which have a dark history of abuse, negligence, and even death.

7.      For more than a decade, Defendants have advertised and sold residential programming to vulnerable adolescents, young adults, and families, charging exorbitant fees for programs which cause further harm and trauma to children, teens, young adults and their families.

8.      To attract potential customers despite this dismal history, Defendants have adopted a practice of targeting consumers in vulnerable positions, misrepresenting the nature of their programming and services, and engaging in unethical and coercive business practices in order to maintain consumers' business.

9.      Despite the façade of providing safe and beneficial residential programming for children and young adults, Defendants have failed to engage in fair business practices and do not fairly provide the services, programming, and goods for which they reap significant financial gain.

10.      Because of Defendants' unfair, immoral, and unethical business practices and misrepresentations, Plaintiffs Jane and June Doe, like hundreds of other families, sought information and help from Defendants for their children and young adults who were struggling at home.

11.      Defendants, and their agents and employees, misrepresented the true nature of their programs, thereby manipulating vulnerable parents, like Jane and June Doe, into believing

---

[2] Family Help & Wellness, *Trails Momentum*,
http://web.archive.org/web/20210111143005/https://famhelp.com/trails-momentum/ (archived by Wayback Machine on Jan. 22, 2021).

Defendants were going to take care of their delicate children and young adults struggling with challenges, including suicidal ideations, and provide them a place to heal and develop.

12.     Instead, Defendants dehumanized their residents. Defendants subjected their residents, including Jane and June Doe's son, to neglect, abuse and inhumane conduct, causing extensive harm and suffering to them.

13.     Plaintiffs and Class members relied upon Defendants' misrepresentations to their financial detriment.

14.     Plaintiffs file this lawsuit on behalf of themselves and others similarly situated to remedy Defendants' unfair and unethical business practices arising from Defendants' marketing, referral, and sale of residential programming for adolescents and young adults.

## PARTIES

15.     Plaintiffs and Class Representatives June Doe and Jane Doe (hereinafter "Plaintiffs") are, at this time, and at all times relevant to this complaint, residents of Florida.

16.     Due to the sensitive, private, and potentially retaliatory nature of their allegations, June Doe and Jane Doe request that this Court allow them to litigate this case using a pseudonym and file a motion to proceed in pseudonym herewith.[3]

17.     Defendant Trails Carolina, LLC f/k/a/ NCWP, LLC is a manager-managed limited liability company organized and existing under the laws of the State of North Carolina since June 25, 2008. Trails Carolina, LLC's "principal office street address" is listed at 500 Winding Gap Rd., Lake Toxaway, NC 28747 in Transylvania County "principal office mailing address" is listed as 530 Center Street NE Ste 700, Salem, OR 9730. Trails Carolina, LLC's managing member is

---

[3] Notably, counsel for Defendants have already been provided the Plaintiffs' real names.

situated in Salem, Oregon. Trails Carolina, LLC is a citizen of North Carolina, Oregon, Texas, Utah, Idaho, Arizona, and Washington for the purposes of federal diversity jurisdiction.

18.     Defendant Trails Academy, LLC is a manager-managed limited liability company organized and existing under the laws of the State of North Carolina since Mar. 20, 2014. Defendant Trails Academy, LLC's "principal office street address" is listed at 555 Sky Valley Camp Rd. Hendersonville, North Carolina 28739 in Henderson County and its "principal office mailing address" is listed as 530 Center Street NE Ste 700, Salem, OR 9730. Trails Academy, LLC's managing member is situated in Salem, Oregon. Trails Academy, LLC is a citizen of North Carolina, Oregon, Texas, Utah, Idaho, Arizona, and Washington for the purposes of federal diversity jurisdiction.

19.     Trails Momentum (now, upon information and belief, rebranded as Momentum) A/K/A Trails Carolina is a for-profit program run, upon information and belief, by Defendant Trails Academy, LLC, Defendant Trails Carolina, LLC, and Wilderness Training & Consulting, LLC, which is part of an organization of for-profit affiliated businesses including named defendants that does business as Family Help & Wellness.

20.     Wilderness Training & Consulting, LLC (hereinafter referred to as "WTC") is an Oregon limited liability company, is, per entity filings with the North Carolina Secretary of State, the managing member of both Defendant Trails Academy, LLC and Defendant Trails Carolina, LLC and does business as Family Help & Wellness. WTC lists in its recent filings with the North Carolina Secretary of State that its managing member is WTC HOLDCO, LLC – Wayne Laird.

21.     Defendant WTC HOLDCO, LLC is another limited liability company existing under the laws of the State of Oregon since Aug. 15, 2017. WTC Holdco, LLC's primary place of business is listed as 530 Center St. NE Ste. 700, Salem, OR 97301.

5

22.    Upon information and belief, Trails Carolina also claims Defendant WTCSL, LLC is the sole member and manager of Wilderness Training & Consulting, LLC. Defendant WTCSL, LLC is a limited liability corporation organized and existing under the laws of the State of Oregon. WTCSL, LLC's primary place of business is listed as 530 Center St. NE Ste. 700, Salem, OR 97301.

23.    Upon information and belief, WTCSL, LLC's membership is a diverse number of individuals invested in the wilderness therapy industry in locations where Family Health and Wellness operates its various programs. Specifically, Trails Carolina claims that WTCSL, LLC members are:

    a.  WTC Holdco, LLC, whose members, according to Trails Carolina, are:

        i.  FHW/THP Blocker, Inc., a private equity firm formed in and maintaining its principal place of business in Texas;

        ii.  PGO, LLC, whose member is Sue Crowell, a citizen of North Carolina;

        iii.  Opal Creek Capital, LLC, whose member is Tim Dupell, a citizen of Oregon;

        iv.  Wayne Laird, a citizen of Oregon; and

        v.  JLC Family, LLC, whose member is Johnny Deblock, a citizen of Washington;

    b.  Graham Shannonhouse, a citizen of North Carolina;

    c.  Kathryn Huffman, a citizen of North Carolina;

    d.  Cat Jennings, a citizen of North Carolina;

    e.  Dilly Bean LLC, whose sole member is Bryan Tomes, a citizen of North Carolina;

6

f.   John Gordon, a citizen of North Carolina;

g.   Mary S. Pierce, a citizen of North Carolina;

h.   Rebecca Gebb, a citizen of North Carolina;

i.   SEJC Holdings, LLC, whose sole member is Kyle Gillett, a citizen of North Carolina;

j.   FNS Group, LLC, whose sole member is Dan Stuart, a citizen of Utah;

k.   Ikaika Holdings LLC, whose sole member is Keoni Anderson, a citizen of Utah;

l.   Randi Nelson, a citizen of Utah;

m.   Jen Wilde Consulting PLLC, whose sole member is Jennifer Wilde, a citizen of Utah;

n.   Laura Burt, a citizen of Utah;

o.   Mahalo Nui, LLC, who sole member is Judith Jacques, a citizen of Utah;

p.   Scott Hess, a citizen of Utah;

q.   Shayne Gallagher, a citizen of Utah;

r.   Sheri Gallagher, a citizen of Utah;

s.   Jesse Long, a citizen of Oregon;

t.   Hayden Dupell, a citizen of Oregon;

u.   Kirsten Morgan, a citizen of Oregon;

v.   Matt Roy, a citizen of Oregon;

w.   Steven Stradley, a citizen of Oregon;

x.   Jon Worbets, a citizen of Idaho;

y.   Kathy Rex, a citizen of Idaho;

z.   Reid Treadaway, a citizen of Idaho;

aa. Simpson Holdings, L.C., whose two members are Jeff Simpson and Becky Simpson, who are citizens of Arizona; and

bb. White Mountain Consulting LLC, whose sole member is Josh White, a citizen of Arizona.

24.    Unnamed Entities 1 – 10 are partners, members, managing members, or subsidiaries of Defendants who worked with Trails with marketing, advertising, referrals, and provision of services, whose names will be known through discovery.

25.    Upon information and belief, the wrongful acts giving rise to this complaint occurred in Henderson County, North Carolina and Marion County, Oregon.

## JURISDICTION AND VENUE

26.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity exists between Plaintiffs and the Defendants, and the amount in controversy in this case exceeds $75,000.00, exclusive of costs and interest.

27.    Plaintiffs are citizens of Florida.

28.    Defendant Trails Academy, LLC conducts business nationwide, including in North Carolina, Oregon, Texas, Utah, Idaho, Arizona, and Washington, and maintains its principal place of business in Henderson County, North Carolina, with a registered agent located at 160 Mine Lake Ct Ste 200, Raleigh NC, 27615. This Court has personal and specific jurisdiction over Defendant Trails as it has had minimum contacts with North Carolina, and purposefully availed itself of, and benefited from, directing activities within the state of North Carolina.

29.    Defendant Trails Carolina, LLC f/k/a/ NCWP, LLC conducts business nationwide, including in Oregon Texas, Utah, Idaho, Arizona, and Washington, and maintains its principal place of business in Transylvania County, North Carolina, with a registered agent located at 160

Mine Lake Ct Ste 200, Raleigh NC, 27615. This Court has personal and specific jurisdiction over Defendant Trails as it has had minimum contacts with North Carolina, and purposefully availed itself of, and benefited from, directing activities within the state of North Carolina.

30.     Defendant Trails Momentum (now, upon information and belief, rebranded as Momentum) A/K/A Trails Carolina conducts business nationwide, including in North Carolina, Oregon, Texas, Utah, Idaho, Arizona, and Washington, and upon information and belief maintains its principal place of business in North Carolina. This Court has personal and specific jurisdiction over Defendant Trails Momentum A/K/A Trails Carolina as it has had minimum contacts with North Carolina, and purposefully availed itself of, and benefited from, directing activities within the state of North Carolina.

31.     Defendant Wilderness Training & Consulting a//k/a Family Help & Wellness conducts business nationwide, including in North Carolina, Oregon, Texas, Utah, Idaho, Arizona, and Washington, and maintains its principal place of business at 530 Center St., NE, Suite 700, Salem, Oregon 97301 with a registered agent located at SW&W Registered Agents, Inc., 1211 SW Fifth Ave., Suite 1900, Portland, Oregon 97204. This Court has personal and specific jurisdiction over Defendant Trails as it has had minimum contacts with North Carolina, and purposefully availed itself of, and benefited from, directing activities within the state of North Carolina.

32.     Defendant WTC Holdco, LLC conducts business nationwide, including in North Carolina, Oregon, Texas, Utah, Idaho, Arizona, and Washington, and maintains its principal place of business at 530 Center St., NE, Suite 700, Salem, Oregon 97301 with a registered agent located at SW&W Registered Agents, Inc., 1211 SW Fifth Ave., Suite 1900, Portland, Oregon 97204. This Court has personal and specific jurisdiction over Defendant WTC Holdco, LLC as it has had

9

minimum contacts with North Carolina, and purposefully availed itself of, and benefited from, directing activities within the state of North Carolina.

33.    Defendant WTCSL, LLC conducts business nationwide, including in North Carolina, Oregon, Texas, Utah, Idaho, Arizona, and Washington, and maintains its principal place of business at 530 Center St., NE, Suite 700, Salem, Oregon 97301 with a registered agent located at SW&W Registered Agents, Inc., 1211 SW Fifth Ave., Suite 1900, Portland, Oregon 97204. This Court has personal and specific jurisdiction over Defendant WTC Holdco, LLC as it has had minimum contacts with North Carolina, and purposefully availed itself of, and benefited from, directing activities within the state of North Carolina.

34.    The Court has personal jurisdiction over Defendants as they conduct business nationwide, including in the state of North Carolina and their misconduct alleged herein took place nationwide, including in North Carolina.

35.    Venue is proper within the Western District of North Carolina pursuant to 18 U.S.C. § 1932(g) because Defendants Trails' principal place of business is located in Henderson and Transylvania County, North Carolina and pursuant to 18 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged occurred in North Carolina. Venue is also proper under 18 U.S.C. § 1931(g) because Defendant Trails Academy, LLC's principal place of business is in Henderson County and Defendant Trails Carolina, LLC's principal place of business is in Transylvania County.

## FACTS

36.    Defendants are in the business of marketing, making referrals for, selling, and providing wilderness and residential programs for "troubled" teens and young adults ages 10 through 25.

10

37.     In the course of this business, Defendants engage in unfair and unethical acts which directly and proximately caused Plaintiffs and Class members (consumers who purchase Defendants' programming) to spend tuition money, a loss they would not have incurred if not for Defendants' unethical and harmful business practices.

38.     Defendants target families of vulnerable children and young adults struggling at home or in school with issues like self-image issues including peer pressure, bullying, and low self-esteem; high incidence and risk of trauma; mental health disorders, such as depression, anxiety, and mood dysregulation; substance abuse; and emotional management issues to be potential consumers.

39.     Class members, when seeking out a program to assist their children, are often in dire need of help and are determined to find their child a safe and supportive program to attend. Defendants exploit this vulnerable position.

40.     Class members spend countless hours researching various programs, including Defendants', before deciding where to send their children.

41.     In this search, Class members encounter Defendants' marketing materials and representatives. In the course of advertising, marketing, and selling their programs, Defendants engage in unfair, unethical, and immoral business practices including the following:

42.     Defendants purport to sell safe and beneficial residential programs for young people.

43.     According to FHW's website, Defendants claim to have substantial experience and provide the utmost care and currently own 15 programs across five states in which they, "provide the highest-quality, personalized care" [4] for Class members' children.

44.     Further, Defendants' marketing materials, website, and agents and employees omit that children and young adults in their programs experience severe neglect, inhumane conditions, abuse, coercion and forced control for the deceptive purpose of lulling Class members into a false sense of security when entrusting their children to Defendants' program and paying for enrollment and tuition.

45.     Defendants represent to Class members that their marketing staff are licensed professionals.

46.     They are not. They are salespeople.

47.     Instead, the agents and employees of Defendants who sell Class members enrollment in these programs, like Francis van de Beuken, are, upon information and belief, just salespeople.

48.     Defendants' employees and agents, including Francis van de Beuken, make misrepresentations and offer unethical advice to Class members, including Plaintiffs, and in reliance on his (and other salespersons') multiple misrepresentations, Class members chose to purchase Defendants' services for their children.

49.     These employees and agents exploit the vulnerable position of Class members to induce their purchase of Defendants' services and enroll their children in Defendants' programs.

---

[4] Owners, Family Help & Wellness, https://famhelp.com/owners/#:~:text=Family%20Help%20%26%20Wellness%20currently%20has,speaking%20engagements%20and%20board%20seats (last accessed Sep. 20, 2023).

50.    For example, when learning about Defendants' wilderness program, Mr. Van de Beuken urged Plaintiffs to purchase Defendants' services immediately, insisting that their son could lose his spot and their son and family would not receive the support that they needed, preying upon their desperation to help their son heal.

51.    Defendants' employ this type of false urgency in their marketing practices, taking advantage of parents seeking help for the kids they love, often making claims that a child or young adult will suffer or endure harm if they don't enter Defendants' program immediately.

52.    As a result of this unethical and unfair pressure, Class members incur the financial loss of Defendants' exorbitant tuition.

53.    Defendants charged Plaintiffs a $3,900.00 enrollment fee and, at $585.00 per day, the first "initial" tuition payment for the first 42 days in a wilderness program cost Plaintiffs $24,570.00. Upon information and belief, all Class members incurred the same or similar initial financial loss.

54.    Once Defendants have received this initial enrollment fee and tuition payment and the Class members' child or young adult has arrived on site at Defendants' program, Defendants engage in a number of unethical, immoral, and unfair business practices which induce continuing financial losses by Class members for tuition payments.

55.    Defendants represent to Class members that the program is a "tranquil" and "enjoyable" experience for their children and young adults. FHW's website states:

> "Wilderness therapy also builds family and community. Small groups work together and form true friendships and memories that last a lifetime. There are few experiences in life more enjoyable than going into the wild with a group of friends."[5]

---

[5] Family Help & Wellness, *Wilderness Therapy*,
https://web.archive.org/web/20210109133909/https://famhelp.com/wilderness-therapy/ (archived by Wayback Machine on Jan. 9, 2021)

56.     Defendants represent that a resident's arrival and early time in at the program is a positive and caring experience. The Trails website represents to Class members:

> "As a student transitions into our program, we do everything we can to ensure comfort. Dedicated therapists provide support and encouragement. Peers already acclimated with the program offer their stories and experiences to make the student not feel so alone. Soon the student learns this is a community based on positive support and personal growth." [6]

57.     However, Defendants utilize their residents' first two weeks on site to establish a high-control relationship with the children and young adults in their program through a number of unethical and unfair practices, including inciting fear and issuing severe punishments.

58.     From the outset, Defendants engage in conduct constituting neglect, manipulation, emotional and sometimes physical and sexual abuse to exacerbate the power imbalance between Class members' kids and residential program staff entrusted with temporary care and control over residents including their basic needs and well-being.

59.     Class members rely on Defendants' representations that a founding principal of the program is consent and refer often to "challenge by choice" in their marketing materials.

60.     However, starting when Class members' children and young adults arrive at Defendants' program site, Defendants' condition the children and young adults to adhere to the practice of strict obedience of its employees, and encourages the "breaking down" its residents, creating an environment of fear and silence.

61.     Upon arrival at Trails, students are forced to submit to a strip search down to their underwear. This is frequently performed by a staff member with no medical background inspecting the student's body and using their hands to feel between the student's legs and genitals. These

---

[6] Trails Momentum Website, *Therapeutic Programs for Young Adults,*
https://web.archive.org/web/20210122083641/https://trailsmomentum.com/b/therapeutic-programs-young-adults/
(archived by Wayback Machine Jan. 24, 2021).

14

examinations are frequently not conducted behind a screen or in a private area causing distress and violation of privacy rights.

62.     Defendants' employees and agents remove students' access to many of their belongings including cell phones or means of communication.

63.     During the first two weeks of a student's stay in the program, Defendants completely restrict any communication between Class members and their kids.

64.     During this early period, staff isolate the new student from their peers pairing the child or young adult with two staff members who guard the student to enforce control and prevent escape utilizing tactics such as forcing the child to sleep in a separate location with staff or to sleep "burritoed" between two staff. The "burrito" sleeping position is where a child is made to sleep wrapped in a tarp and then a staff member sleeps on top of that tarp so the child cannot escape. This is the sleeping position which caused the death of a 12-year-old boy at Trails in 2024.[7]

65.     Other tactics that staff utilize include taking away camper's shoes or clothing to make it more difficult for a child to run away or placing the child in a separate sleeping area or cabin.

66.     Expecting a very different, positive experience based on Defendants' misrepresentations and marketing, this entry into the coercive, abusive, and neglectful practices often comes to the children and young adults as a shock.

67.     Defendants' agents and employees systematically warn and condition Class members that they should expect their children might be upset or complain about going to this program.

---

[7] Dominic Yeatman, *Shock coroner's report reveals death of boy, 12, at Trails Carolina "wellness" camp was 'homicide' after he was sealed into sleeping bag-like 'burrito'*, Daily Mail, June 25, 2024, https://www.dailymail.co.uk/news/article-13567565/camper-death-ruled-homicide-trails-carolina-autopsy-report.html

68.     Defendants manipulate Class members by justifying that this is a "natural" part of the transition period in order to secure the business of the Class members, noting:

> "Many students come to our program scared and apprehensive about what will happen next. Their first few days may be met with resistance and the strong desire to go home. This is a completely natural response to change. After all, change is hard. It's so easy to hide in a comfort zone. As a student transitions into our program, we do everything we can to ensure comfort. Dedicated therapists provide support and encouragement. Peers already acclimated with the program offer their stories and experiences to make the student not feel so alone. Soon the student learns this is a community based on positive support and personal growth." [8]

69.     Defendants use this type of language to manipulate and condition Class members to question and doubt complaints from their children and young adults in the program.

70.     Defendants instruct Class members that they should encourage their child to engage in the programming and that Class members should commit to the programming themselves in order to ensure the efficacy of the program and to reach a positive result.

71.     Such misrepresentations exploit Class members desperate to do anything to help their child or loved one. As a result, Class members continue to engage in business with Defendants, resulting in financial loss.

72.     After this two-week period, Defendants' misrepresentations and unfair, unethical, and immoral business practices continue.

73.     As there is no pre-determined length of stay for a child or young adult in Defendants' program, Defendants continue marketing to and selling additional two-week increments of time in the program to Class members.

---

[8] Trails Momentum Website, *Therapeutic Programs for Young Adults,*
https://web.archive.org/web/20210122083641/https://trailsmomentum.com/b/therapeutic-programs-young-adults/
(archived by Wayback Machine Jan. 24, 2021).

74.    After the initial 42 days, Defendants charge Class members $585.00 per day for "Extension of Stay" meaning that each two-week extension of stay results in an $8,190.00 financial loss for Class members. This does not include separate and additional fees for healthcare treatment.

75.    Defendants misrepresent the length of stay for an individual student in the program to receive tuition payment and claimed that the length of stay was driven by that individual's "progress," or more accurate, Defendants misrepresentations that there is a lack of progress, in the program.

76.    In the course of ongoing marketing, program referrals, and sales, Defendants omit the key information from their advertising and sales pitches that they subject children to severe neglect, inhumane conditions, abuse, coercion, and forced labor.

77.    Trails' website from February 2021, just before Plaintiffs purchased tuition for their son, advertised:

> "This tranquil environment is where our students slow down and take the time to understand who they are at their core, what is getting in their way, and find the personal motivation to successfully move forward as a young adult.[9]

78.    Defendants do not tell Class members the frequency of incidents of physical abuse and neglect, food and clothing deprivation, injury, sexual abuse and battery, and forced labor to which its residents are subject, including Plaintiffs' son, for the purpose of lulling parents and residents into a misleading sense of security to enter and remain in a business agreement.

79.    Defendants, by and through its owners, officer, managers, employees, and agents, have known for years that some of the residents have been neglected, sexual and physically

---

[9] Trails Momentum Website, *Our Campus,*
https://web.archive.org/web/20210124190104/https://trailsmomentum.com/campus/ (archived by Wayback Machine Jan. 24, 2021).

battered by their staff and other residents at Trails, yet have failed to take corrective action and continued the same business practices which enabled such misconduct.

80.     Defendants put residents, including Plaintiffs' son, in settings where staff and peers have the opportunity to neglect, physically and sexually abuse, and force labor upon residents given the secluded and unsupervised settings.

81.     Trails states on their website: "We believe that you always have the option to leave if you choose. As an adult, you are capable of making that decision without your parent's support. We may offer guidance in your decision-making process and offer suggestions for alternative resources if you ask, but ultimately, it is up to you."[10]

82.      However, students quickly learn they have no choice or option to leave the program, as Defendants misrepresent to Class members.

83.     Defendants used force and threats to keep students within its programs.

84.     Defendants' agents and employees threatened the children and young adults that they would be forced back or even arrested if they attempt to leave.

85.     Defendants utilized remote settings for their program, often taking students deep into the wilderness, as this prevented students from attempting to leave on foot as it was impracticable and dangerous.

86.     Defendants' employees and agents routinely threatened and manipulated students by telling them the story of Alec Lansing.

---

[10] Trails Momentum Website, *FAQs,*
https://web.archive.org/web/20210301190615/https://trailsmomentum.com/faq/ (archived by Wayback Machine Jan. 24, 2021).

87.     Alec Lansing was a 17-year-old boy who attended Trails in 2014 and attempting to escape from the abusive program died in the wilderness. Alec was missing for almost two weeks until rescuers discovered his body.[11]

88.     Defendants' employees and agents tell students that if they attempt to leave, they would face the same danger and likely meet with the same fate.

89.     Defendants do not permit students to keep cell phones or money so they would not have supplies to safely leave the program. In some circumstances, Defendants withhold children's shoes or clothes in order to prevent them from leaving the program.

90.     If Defendants believe that a child or young adult is likely to attempt to leave, their staff use physical force such as restraint, which upon information and belief their staff are not qualified or trained to do, or staff will "burrito" a child in a tarp or bivvy which is invasive, claustrophobic, and extremely dangerous.

91.     Although Defendants represent that individuals over 18 can choose to leave, their unethical practices work to combat and undermine students' autonomy to prevent exercise of free will.

92.     Relying on Defendants' misrepresentations and presuming that Defendants are engaging in ethical, fair, and safe business practices, Class members continue to incur financial losses as they pay Defendants per day their child remains in Defendants' program.

93.     In addition to the force and threats described above, Defendants put up stringent requirements and unnecessary and harmful hurdles to prevent students from being able to leave their program.

---

[11] Holly Kays, *Atlanta Teen Missing From Wilderness Therapy Program*, Smoky Mountain News, Nov. 18, 2024, https://smokymountainnews.com/archives/item/14655-atlanta-teen-missing-from-wilderness-therapy-program.

94.     There is no set amount of time that Defendants' program will last for children and young adults. Defendants' internally determine a student's length of stay, often based upon arbitrary and unfair measures such as whether a student can start a fire with a bow drill, whether a student is fully compliant with Defendants' program, whether Class members and students agree to enroll in another one of the residential programs offered by Family Help & Wellness.

95.     Defendants promote the ideas of strict compliance, of not letting the children and young adults know each other's or field staff's last names and of not "rocking the boat," blaming victims for harmful events that have occurred, all of which help facilitate a culture that keeps young victims fearful, silent and compliant.

96.     In furtherance of continued financial gain and evading accountability for the abuse and mistreatment of children and young adults, Defendants and their agents and employees censor communications between Class members and the students in the programs.

97.     Trails represented to Plaintiffs and Class members that they would, not only be permitted to have uncensored communication with their child or young adult, but that communication between Class members and their son/daughter is encouraged and facilitated. Defendant Trails' website states:

> "How much is family involved? Parents are encouraged to stay engaged in their young adult's journey through letter writing (done via the computer), family therapy calls and a parent workshop where you can connect with other parents in our program. We believe that growth is beneficial for the whole family, not just the young adult, and we work to help families rebuild trust and change their communication styles. Our goal is to help you reconnect and set healthy boundaries with one another." [12]

---

[12] Trails Momentum Website, *FAQs,*
https://web.archive.org/web/20210301190615/https://trailsmomentum.com/faq/ (archived by Wayback Machine Jan. 24, 2021).

98. Plaintiffs and Class members relied upon these statements to their financial detriment.

99. Defendants prevent students from communicating freely with Class members or others outside of their programs by limiting when students can write letters or make phone or video calls and also by surveilling and censoring the content of their written and verbal communications, and that of the parents.

100. Defendants engage in this unethical business practice to prevent students from reporting abuse or neglect or otherwise asking to be removed from the program for financial gain.

101. If students tried to ask Class members to be taken out of the program or tried to share complaints regarding the program, Defendants would mute the call so that the complaints did not reach Plaintiffs and Class members.

102. Defendants charge Plaintiffs and Class members significant amounts of money for tuition including fees for clothing and equipment.

103. Defendants, however, provided inadequate equipment and gear for students. Defendants failed to appropriately equip students for the weather and type of activities they had students engage in, leaving them freezing and hungry.

104. Students were forced to engage in regular backpacking trips into the wilderness with limited gear and in oftentimes brutal weather conditions exposing students to frostbite and other ailments.

105. Defendants failed to provide sufficient food when sending students into the wilderness, particularly given the excessive exercise and labor they were required to do.

106. When out in the wilderness, students were only able to eat the food that they managed to prepare from the limited ingredients provided.

107.    This meant if a student was unable to start a fire using a bow drill after a full day of strenuous hiking, they would not be allowed to eat a hot meal.

108.    Further, when students were out backpacking in the wilderness, Defendants failed to provide sufficient access to hygiene facilities and supplies.

109.    Defendants misrepresent that students will be supervised and supported by staff with appropriate training and qualifications.

110.    Defendant Family Help & Wellness guarantees students' safety stating, "While the experience is overseen by professionals – that is to say, no real danger can come to the children – there is a degree of perceived risk and a sense of very real accomplishment. "[13]

111.    Defendant Trails further promises: "As a relationship-based program, we value creating a safe and nurturing community to help young adults grow." [14]

112.    Plaintiffs and Class members rely upon Defendants' misrepresentations to their financial detriment.

113.    Upon information and belief, Defendants' staff are not appropriately qualified, trained, or supervised to provide safe and effective wilderness programming for children and young adults.

114.    In fact, Defendants' programs have a long track record of abuse and neglect of children and young adults which they fail to advise Class members.

115.    Defendants, by their unethical and immoral business practices related to safety, create an environment that enables abuse, neglect, and forced labor of vulnerable young people.

---

[13] Family Help & Wellness, *Wilderness Therapy*, https://web.archive.org/web/20210109133909/https://famhelp.com/wilderness-therapy/ (archived by Wayback Machine on Jan. 9, 2021)

[14] Trails Momentum Website, *FAQs*, https://web.archive.org/web/20210301190615/https://trailsmomentum.com/faq/ (archived by Wayback Machine Jan. 24, 2021).

116. Further, rather than paying for qualified, trained staff as represented to Class members, Defendants utilize the labor of the children and young adults in the program in order to run the program.

117. Defendants coerce and force the children and young adults in their program to engage in much of the menial labor required to operate their business including cooking, cleaning, clearing trails, and other campus maintenance.

118. Defendants coerce and force this unpaid labor through emotional and physical abuse as well as by extending the child or young adult's program duration.

119. Further, upon information and belief, the majority of staff employed by Defendants to run their programming are not qualified mental health providers.

120. Despite the assurances from Defendants that students enrolled would receive mental health treatment, Defendants typically provided, upon information and belief, only one hour with a mental health provider per week, leaving students with unqualified and insufficiently trained individuals for the vast majority of their time in the program.

121. The unfair and unethical acts of Defendants directly and proximately caused plaintiffs and Class members to spend significant money to Defendants which was a financial loss they would not have incurred but for Defendants' unethical and harmful business practices.

122. Defendants represent that they will help prepare students for success in school, work, and young adulthood. For example, they represent that they will assist in planning for whatever path a student may pursue following their exit from Trails.

123. Defendants utilize this opportunity to engage in further sales of their programmatic offerings to Class members, often in contravention of a student's best interests.

124. For example, Defendants represented to Plaintiffs that their staff would help

23

Plaintiffs' son navigate his decision of where to go for his undergraduate education.

125. Despite getting admitted to his dream school, Defendants put immense pressure on John to choose a university which had a Family Help & Wellness / Wilderness Training & Consulting affiliated transitional program in order to gain further business for Defendants.

126. Plaintiffs' son wanted desperately to leave Trails and to discontinue any involvement with Defendants' abusive, coercive, and neglectful practices.

127. However, under Defendants' pressure, Plaintiffs' son agreed to choose a university which had a transition program run by Defendants. If it were not for the pressure and manipulation by Defendants, he would not have chosen this university and has regretted this decision he was coerced to make ever since.

128. Similarly, Defendants use similar unethical tactics to coerce Class members to pay for other residential programs or transitional programs, increasing Class members' financial loss incurred as tuition payments to Defendants.

129. To this day, Defendants deny any wrongdoing and to this day maintains all secrecy concerning the mistreatment within their programs.

130. It was not until recently that Plaintiffs were reasonably able to identify and understand and discover that their financial losses were the result of unfair and unethical business practices and that they suffered significant injury as a result of Defendants' misconduct.

## CLASS ALLEGATIONS

131. While Plaintiffs' claims relate to different Families Help & Wellness / Wilderness Training & Consulting facilities, the unfair and deceptive practices originated with Defendant Family Help & Wellness and Defendant Wilderness Training & Consulting.

24

132.    Plaintiffs bring this lawsuit individually and, pursuant to Rule 23(a), (b)(3), (c)(4) of the Federal Rules of Civil Procedure, for economic losses on behalf of all persons in the United States who have purchased residential program services from Defendants. (the "Nationwide Class").

133.    In addition, Plaintiffs bring this lawsuit on behalf of a subClass of persons in Florida who purchased residential program services from Defendants.(The "Florida Class").

134.    The Nationwide Class and each state-wide Class defined above are referred to collectively herein as the "Class."

135.    Excluded from each Class are Defendants, their affiliates, employees, officers, and directors, and the Judge(s) assigned to this case.

136.    Plaintiffs reserve the right to modify, change, or amend the Class definitions set forth above based on discovery and further investigation.

137.    Numerosity. Each defined Class are so numerous that joinder of all Class members is impracticable and the disposition of their claims in a Class action rather than in individual actions will benefit the parties and the courts. Plaintiffs do not presently know the exact size of the Classes at this time but this information is in Defendants' possession and will be obtained in discovery.

138.    Plaintiffs are currently unaware of the identities of all the consumers who would be members of the Class and subClasses, but this information is readily ascertainable from Defendants' records. Defendants should be required to provide Plaintiffs with a list—including last known addresses, telephone numbers, and email addresses if known—of all parents, family members, and other consumers who purchased enrollment in a Family Help & Wellness program.

139.    Common **Questions Predominate.** This action involves common questions of law and fact to each Class because each member's claim derives from Defendants' false, deceptive,

and misleading statements and omissions as alleged above. Such questions in common include but are not limited to:

- The misstatements and omissions made by Defendants in their promotion, advertising and marketing regarding residential programming;

- Whether a reasonable consumer would consider the misstatements and omissions to be material;

- Whether a reasonable consumer would be misled by Defendants' promotion, advertising and marketing of their residential programming;

- Whether a reasonable consumer would rely upon the misstatements and omissions made by Defendants concerning their residential programming;

- Defendants' knowledge of their misstatements and omissions;

- The date of Defendants' knowledge;

- Whether each of the alleged promotional, marketing and advertising misstatements described in detail above was misleading;

- Whether Defendants engaged in unfair business practices;

- Whether Defendants conduct violates each of the laws set forth in the causes of action below;

- The source and amount of the Class's and subClasses' damages; and the like.

The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. Additionally, Class treatment of common issues under the Federal Rule of Civil Procedure 23(c)(4) will materially advance the litigation.

140. **Typicality**. Plaintiffs' claims are typical of the claims of other members of the Class(es) they represent because, among other things, all such claims arise out of the same misconduct by Defendants as alleged herein. Plaintiffs and those similarly situated purchased residential programming in reliance upon Defendants' misrepresentations, omissions and unfair

practices and they all suffered economic damages as a result in the form of, for example, the purchase price of Defendants' residential programs.

141.    **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of all Class members because it is in their best interest to prosecute the claims alleged herein to obtain full compensation due to them for the unfair misconduct of which they complain. Plaintiffs have no interests that are in conflict with, or antagonistic to, the interests of Class members. Plaintiffs have retained highly competent and experienced Class action attorneys to represent their interests and those of the Class members. By prevailing on their own claims, Plaintiffs will establish Defendants' liability to all Class members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this Class action and Plaintiffs and their undersigned counsel are aware of their fiduciary responsibilities to the Class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class members.

142.    **Superiority**. There is no plain, speedy, or adequate remedy other than by maintenance of this Class action. The prosecution of individual remedies by Class members will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, an important public interest will be served by addressing the matter as a Class action.

143.    Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a Class action.

## Violation of North Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et seq* *(Nationwide Class and Plaintiffs Against All Defendants)*

144. Plaintiffs incorporate by reference the allegations contained in the previous paragraphs.

145. Plaintiffs bring this count individually and on behalf of the Class.

146. Defendants are engaged in "trade" and "commerce" within the meaning of N.C. Gen. Stat. Ann. §75-1.1 as they market, promote and sell wilderness programs within the State for sale to consumers.

147. Defendants' representations were material to a reasonable consumer and likely to affect consumer decisions and conduct.

148. Defendants used and employed deceptive and unfair methods of competition and unfair or deceptive acts, practices and or representations in the conduct of trade or commerce.

149. Defendants engaged in numerous unfair and deceptive acts that were immoral, unethical, oppressive, unscrupulous, and substantially injurious to Plaintiffs, Class members and other consumers. Defendants have a knowledge advantage that consumers do not about its business, both prior to parents choosing to trust their children and loved ones to its custody and care, and while Defendants have exclusive custody and care over the adolescents and teens.

150. Defendant's acts and practices offend public policy as established by statute. Defendants' acts and practices violate the Federal Trade Commission Act, which provides that "unfair or deceptive acts or practices in or affecting commerce . . . are . . . declared unlawful." 15 U.S.C. Sec. 45(a)(1). An act or practice is "unfair" if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n).

28

151.    Defendants' acts and practices are fraudulent, willful, knowing, or intentional, immoral, unethical, oppressive, and unscrupulous.

152.    Defendants' conduct is substantially injurious to consumers. Such conduct has, and continues to cause, substantial economic injury to consumers because consumers would not have paid for Defendants' wilderness programming but for Defendants' deceptive and unfair promotion as detailed throughout this Complaint.

153.    Consumers have thus paid unnecessarily for tuition and such injury is not outweighed by any countervailing benefits to consumers or competition.

154.    No benefit to consumers or competition results from Defendants' conduct. Since consumers reasonably rely on Defendants' representations of its services and injury results, consumers could not have reasonably avoided such injury.

155.    The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiffs and the Class to suffer an ascertainable loss when they paid for wilderness programming based on deceptive and misleading material statements and omissions.

156.    Plaintiffs and the Class are entitled to recover treble damages and other appropriate relief, as alleged below pursuant to N.C. Gen. Stat. Ann. §75-16.

157.    As the direct result of the foregoing deceptive solicitation and the immoral, unethical and unscrupulous manner that Defendants conduct its business, Plaintiffs were substantially injured, and they hereby seek relief in excess of $75,000.00 exclusive of interest and costs.

## **COUNT II**
**Violations of Florida Deceptive and Unfair Trade Practices Act,**
**Fla. Stat. § 501.201,** *et seq.*
**(*On behalf of the Florida Class Against All Defendants*)**

158.    Plaintiffs incorporate by reference all preceding allegations.

159. Plaintiffs are a "consumer" within the meaning of Fla. Stat. § 501.203.

160. Defendants are engaged in "trade" and "commerce" within the meaning of Fla. Stat. § 501.203 as they market, promote, and sell programs for "troubled" children to consumers within the State of Florida.

161. Defendants' representations were material to a reasonable consumer and likely to affect consumer decisions and conduct.

162. Defendants used and employed deceptive and unfair methods of competition and unfair or deceptive acts, practices, and or representations in the conduct of trade or commerce.

163. Defendants' acts and practices offend public policy as established by statute. Defendants' acts and practices violate the Federal Trade Commission Act, which provides that "unfair or deceptive acts or practices in or affecting commerce . . . are . . . declared unlawful." 15 U.S.C. Sec. 45(a)(1). An act or practice is "unfair" if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n).

164. Defendants' acts and practices are fraudulent, willful, knowing, or intentional, immoral, unethical, oppressive, and unscrupulous.

165. Defendant Trails is vicariously liable for the negligent, reckless, or wanton acts of its agents and employees, including negligent hiring, retention, and supervision.

166. Defendants' conduct is substantially injurious to consumers. Such conduct has, and continues to cause, substantial economic injury to consumers because consumers would not have paid for Defendants' programs but for Defendants' false and misleading representations, omissions, and promotion as detailed throughout this Complaint.

167.    Consumers have thus paid unnecessarily for programs and such injury is not outweighed by any countervailing benefits to consumers or competition.

168.    No benefit to consumers or competition results from Defendants' conduct. Since consumers reasonably rely on Defendants' representations of its services, consumers could not have reasonably avoided such injury.

169.    The foregoing unfair and deceptive practices directly, foreseeably, and proximately caused Plaintiffs and the Florida Class to suffer an ascertainable loss when they paid for programs based on Defendants' false and misleading material statements and omissions.

170.    Plaintiffs and the Florida Class are entitled to recover damages and other appropriate relief pursuant to Fla. Stat. § 501.211 and 501.2105.

**COUNT III**
**Violations of Oregon Unlawful Trade Practices Act, Or. Rev. Stat. 646.608,** *et seq.*
***(On Behalf of the Nationwide Class and Plaintiffs***
***Against WTC a/k/a FHW, WTCHoldco LLC, WTCSL, LLC)***

171.    Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

172.    Plaintiffs bring this count individually and on behalf of the Class.

173.    Defendants acted willfully, and as a result of their misrepresentations and failures to disclose, Plaintiffs and members of the Class suffered ascertainable loss of money.

174.    Plaintiffs and members of the Class are entitled to refunds, together with interest. Or. Rev. Stat. 646.636.

175.    As the direct result of the foregoing unfair business practices and the immoral, unethical and unscrupulous manner that Defendants conduct its business, Plaintiff was substantially injured, and he hereby seeks relief in excess of $75,000.00, exclusive of interest and costs.

31

<u>**COUNT IV**</u><br>
**Negligent Misrepresentation**<br>
(***On Behalf of the Nationwide Class and Plaintiffs Against All Defendants***)

176.    Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

177.    Plaintiffs bring this count individually and on behalf of the Class.

178.    Plaintiffs' claim has not expired.

179.    Defendant Trails had a duty to promote and advertise its programs and services truthfully including material information for consumers to make an informed decision for their children.

180.    Defendants acted willfully, and as a result of their misrepresentations and failures to disclose, plaintiffs and members of the Class suffered ascertainable loss of money.

181.    As a direct and proximate result of Defendants' actions, by and through its agents and employees, Defendants breached its duty and they were caused to suffer financial injury.

182.    Defendant Trails is vicariously liable for the negligent, reckless, or wanton acts of its agents and employees, including negligent hiring, retention, and supervision.

183.    As a direct and proximate result of Defendant Trails' negligent, wanton and/or otherwise unreasonable conduct, Plaintiffs suffered financial harm.

<u>**COUNT V**</u>

**Negligent Infliction of Emotional Distress**

(***On Behalf of Plaintiffs Individually Against All Defendants***)

184.    Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

185.    Plaintiffs bring this count individually.

32

186.     Plaintiffs' claim has not expired.

187.     Defendant Trails had a duty to promote and advertise its programs and services truthfully including material information for consumers to make an informed decision for their children.

188.     Defendants acted willfully, and as a result of their misrepresentations and failures to disclose, plaintiffs suffered severe emotional distress.

189.     As a direct and proximate result of Defendants' actions, by and through its agents and employees, Defendants breached its duty and they were caused to suffer financial injury.

190.     It was reasonably foreseeable that the Defendants' negligent conduct including, but limited to manipulation, misrepresentations, unfair and unethical business practices, and abuses would cause Plaintiffs severe emotional distress given their close familial relationship and the natural concern parents have for their child's well-being.

191.     Defendants' misconduct did in fact cause them severe emotional distress. Plaintiffs' knowledge of their son's abuse, neglect and forced labor and the resulting impact on his mental and physical health caused them severe emotional distress.

192.     Defendant Trails is vicariously liable for the negligent, reckless, or wanton acts of its agents and employees, including the negligent hiring, retention, and supervision.

193.     As a direct and proximate result of Defendant Trails' negligent, wanton and/or otherwise unreasonable conduct, Plaintiffs suffered financial harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully demand a jury trial and prays for the following:

a.   Determine that Defendant is liable for the violations set forth above;

33

b. Award Plaintiffs and the Class all compensatory, statutory, restitution, and punitive damages as provided by law;

c. Certify each Class as defined herein, designating Plaintiffs as Class representatives, and appointing the undersigned counsel as Class Counsel;

d. Declare that Defendant is financially responsible for notifying the Class members of the pendency of this action;

e. Require that Defendant disgorge amounts wrongfully obtained for tuition and fees and award injunctive relief as permitted by law or equity, including enjoining Defendants from engaging in misleading and deceptive practices going forward;

f. Schedule a trial by jury in this action on all claims so triable;

g. Award Plaintiffs' reasonable attorneys' fees, costs, and expenses, as provided by law;

h. Award Plaintiffs and Class members trebled, statutory, and/or punitive damages as authorized by law;

i. Award pre-judgment and post-judgment interest on any amounts awarded, as provided by law; and

j. Grant such further relief that the Court deems appropriate.

Dated: October 11, 2024

RESPECTFULLY SUBMITTED,

/s/ *Joel R. Rhine*

RHINE LAW FIRM, P.C.
Joel R. Rhine, NCSB 16028
Email: jrr@rhinelawfirm.com
Ruth A. Sheehan, NCSB 48069
Email: ras@rhinelawfirm.com
John Bruno, NCSB 54775
Email: jab@rhinelawfirm.com
1612 Military Cutoff Road, Suite 300
Wilmington, NC 28403

34

Tel: (910) 772-9960
Fax: (910) 772-9062

*/s/ Kimberly Dougherty*

Kimberly A. Dougherty, Esq.
*(pending pro hac vice admission)*
Martha Carol, Esq.
*(pending pro hac vice admission)*
JUSTICE LAW COLLABORATIVE
210 Washington St.
North Easton, MA 0256
(508) 230-2700
kim@justicelc.com
martha@justicelc.com

*Attorneys for Plaintiffs*